UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:08-cv-322-ESH |
| | ) | |
| UNITEDHEALTH GROUP | ) | |
| INCORPORATED and | ) | |
| SIERRA HEALTH SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF UNITED STATES' MOTION FOR ENTRY OF
PROPOSED FINAL JUDGMENT AND MEMORANDUM IN SUPPORT**

Pursuant to Section 2(e)-(f) of the Antitrust Procedures and Penalties Act (the "APPA" or

"Tunney Act"), 15 U.S.C. § 16(e)-(f), with the consent of the Defendants, the United States

moves for entry of the proposed Final Judgment (copy attached) in this civil antitrust action.

**I.    The United States and the Defendants have complied with the APPA**

Simultaneously with this motion, the United States is filing a Certificate of Compliance

certifying that the parties have complied with all applicable provisions of the APPA and that the

waiting periods imposed by the APPA have expired.  The APPA prescribes a sixty-day period

following publication of notice in the *Federal Register* for the submission of comments.

15 U.S.C. §§ 16(b) and (d).  Notice of the proposed Final Judgment was published in the *Federal

Register* on March 10, 2008.  The APPA also prescribes a sixty-day waiting period following

commencement of publication in a local newspaper before the Judgment may be entered.

15 U.S.C. § 16(c).  Notice of the proposed Final Judgment was published in a local newspaper,

the *Washington Post*, beginning on March 16, 2008 and ending on March 22, 2008, and in the

*Las Vegas Review-Journal* beginning on March 8, 2008 and ending on March 14, 2008.  Thus,

the sixty-day comment period ended on May 15, 2008.  The United States received four

comments and filed those comments with the Court on July 7, 2008.  The United States filed its

response to these comments on July 7, 2008 and published the comments, their attachments, and

the Response of the United States in the *Federal Register* on August 22, 2008.  *See* 15 U.S.C.

§ 16(d) (noting that the United States shall file comments with the district court and publish them

in the *Federal Register*.)  The Court may now enter the Final Judgment, which is attached to this

Motion.

## II.     The Proposed Final Judgment Satisfies the "Public Interest" Standard

Before entering the proposed Final Judgment, the Court must determine whether the

Judgment "is in the public interest," *see* 15 U.S.C. § 16(e)(1).  In making that determination, the

Court shall consider:

> (A) the competitive impact of such judgment, including termination of alleged
> violations, provisions for enforcement and modification, duration of relief sought,
> anticipated effects of alternative remedies actually considered, whether its terms
> are ambiguous, and any other competitive considerations bearing upon the
> adequacy of such judgment that the court deems necessary to a determination of
> whether the consent judgment is in the public interest; and

> (B) the impact of entry of such judgment upon competition in the relevant market
> or markets, upon the public generally and individuals alleging specific injury from
> the violations set forth in the complaint including consideration of the public
> benefit, if any, to be derived from a determination of the issues at trial.

15 U.S.C. § 16(e)(1).

The United States filed a Competitive Impact Statement ("CIS") on February 25, 2008.

In the CIS, the United States explained that entry of the proposed Final Judgment is in the public

interest because it remedies the Defendants' violations alleged in the Complaint, prevents

recurrence of those violations, and preserves competition in the relevant market.  The CIS

2

describes the meaning and proper application of the public-interest standard under the APPA, and the United States incorporates those statements herein by reference.

The public has had an opportunity to comment on the proposed Final Judgment as required by law. Four comments were submitted to the United States. The United States filed its Response to Public Comments on the proposed Final Judgment, which explains why the proposed Final Judgment is within the range of settlements consistent with the public interest.

**III.    Conclusion**

For the reasons set forth in this Memorandum, the CIS, and the Response to Public Comments, the Court should find that the proposed Final Judgment is in the public interest. The Court should then enter the proposed Final Judgment.

Dated: August 25, 2008                                    Respectfully Submitted,

*Peter J. Mucchetti*

Peter J. Mucchetti (D.C. Bar # 463202)
Barry J. Joyce
Richard S. Martin
Trial Attorneys
Litigation I Section - Antitrust Division
United States Department of Justice
1401 H Street NW, Suite 4000
Washington, D.C. 20530
(202) 353-4211
(202) 307-5802 (facsimile)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Civil No. 1:08-cv-322-ESH |
| ) | |
| v. ) | Judge |
| ) | |
| UNITEDHEALTH GROUP ) | Filed: |
| INCORPORATED and ) | |
| SIERRA HEALTH SERVICES, INC., ) | |
| ) | |
| Defendants. ) | |

## FINAL JUDGMENT

WHEREAS, plaintiff, United States of America, filed its Complaint on February 25, 2008, and the United States and Defendant UnitedHealth Group Incorporated and Defendant Sierra Health Services, Inc., by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights and assets by Defendants to ensure that competition is not substantially lessened in the sale of Medicare Advantage Plans to senior citizens and others in the Las Vegas, Nevada area;

AND WHEREAS, the United States requires Defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to the United States that the divestiture required by this Final Judgment can and will be made, and that Defendants will not later raise any claim of hardship or difficulty as grounds for asking the Court to modify any of the provisions of this Final Judgment;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I.    JURISDICTION

This Court has jurisdiction over the subject matter of, and each of the parties to, this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

## II.    DEFINITIONS

As used in this Final Judgment:

A.    "Acquirer" means the entity to whom the Divestiture Assets are divested.

B.    "Clark County" means Clark County, Nevada.

C.    "Clark County CMS Plans" means the individual Medicare Advantage plans offered under CMS Plan Nos. H2949-002, H2949-009, and H2949-012, but does not include any Series 800 Medicare Advantage plans offered to retirees through commercial customers or contracts.

2

D.    "Clark and Nye County CMS Plans" means the Clark County CMS Plans and the Nye County CMS Plans.

E.    "CMS" means the Centers for Medicare and Medicaid Services, an agency within the U.S. Department of Health and Human Services.

F.    "Divestiture Assets" means all tangible and intangible assets dedicated to the administration, operation, selling, and marketing of the Clark and Nye County CMS Plans, including (1) all of United's rights and obligations under United's Medicare Contract No. H2949 with CMS relating to the Clark and Nye County CMS Plans, including the right to offer the Medicare Advantage plan to individual enrollees pursuant to the bids and Evidence of Coverage filed with CMS in 2007 for the 2008 contract year, and the right to receive from CMS a per member per month capitation payment in exchange for providing or arranging for the benefits enumerated in the bids and Evidence of Coverage, and (2) copies of all business, financial and operational books, records, and data, both current and historical, that relate to the Clark County CMS Plans or the Nye County CMS Plans. Where books, records, or data relate to the Clark County CMS Plans or the Nye County CMS Plans, but not solely to these Plans, United shall provide excerpts relating to these Plans. Nothing herein requires United to take any action prohibited by the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

G.    "Evidence of Coverage" means the document that outlines an enrollee's benefits and exclusions under a Medicare Advantage Plan.

H.    "HealthCare Partners" means JSA Healthcare Nevada, LLC, a Nevada limited liability company, and its affiliated entities, including HealthCare Partners, LLC and Summit Medical Group.

I.      "Humana" means Humana Inc., a Delaware corporation with its headquarters in Louisville, Kentucky.

J.      "Las Vegas Area" means Clark County and Nye County.

K.      "Medicare Advantage Line of Business" means the operations of United that implement and administer the Clark and Nye County CMS Plans.

L.      "Medicare Advantage Plan" means Medicare Advantage health maintenance organization plans, Medicare Advantage preferred provider organization plans, and Medicare Advantage private fee-for-service plans, as defined by 42 U.S.C. § 1395w-21(a)(2).

M.      "Nye County" means Nye County, Nevada.

N.      "Nye County CMS Plans" means the individual Medicare Advantage plans offered under CMS Plan Nos. H2949-007 and H2949-011, but does not include any Series 800 Medicare Advantage plans offered to retirees through commercial customers or contracts.

O.      "PIPA" means The Physicians IPA, Inc., a Nevada non-profit corporation based in Las Vegas, Nevada.

P.      "Provider Network" means all health care providers, including physicians, hospitals, ancillary service providers, and other health care providers with which United contracts for the provision of covered medical services for United's Medicare Advantage Plans in the Las Vegas area.

Q.      "Sierra" means Defendant Sierra Health Services, Inc., a Nevada corporation with its headquarters in Las Vegas, Nevada, its successors and assigns, and

4

its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their respective directors, officers, managers, agents, and employees.

R.    "Transaction" means the merger contemplated by the Agreement and Plan of Merger dated as of March 11, 2007, by and among United, Sapphire Acquisition, Inc. and Sierra.

S.    "United" means Defendant UnitedHealth Group Incorporated, a Minnesota corporation with its headquarters in Minnetonka, Minnesota, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their respective directors, officers, managers, agents, and employees.

## III.  APPLICABILITY

A.    This Final Judgment applies to United and Sierra, and to all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B.    If, prior to complying with Section IV and VI of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from the Acquirer of the assets divested pursuant to this Final Judgment.

## IV.  DIVESTITURE OF THE DIVESTITURE ASSETS

A.    Defendants are ordered, within forty-five (45) calendar days after the filing of the Complaint in this matter, to divest the Divestiture Assets in a manner consistent with this Final Judgment to an Acquirer acceptable to the United States in its sole discretion and on terms acceptable to the United States in its sole discretion,

including any agreement for transitional support services entered into pursuant to Section IV(J) of this Final Judgment. The United States, in its sole discretion, may grant one or more extensions of this time period, not to exceed sixty (60) calendar days in total, and shall notify the Court in each such circumstance. Defendants shall accomplish the divestiture of the Divestiture Assets as expeditiously as possible and in such a manner as will allow the Acquirer to be a viable, ongoing business engaged in the sale of Medicare Advantage Plans in the Las Vegas Area.

B.    If applications for approval have been filed with CMS and the appropriate other governmental units within twenty (20) calendar days after the filing of the Complaint in this matter, but these required approvals have not been issued before the end of the period permitted for Divestiture in Section IV(A), the United States may extend the period for Divestiture until five (5) business days after all necessary government approvals have been received.

C.    The Divestiture shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by the Acquirer as part of a viable, ongoing business engaged in the sale of Medicare Advantage Plans in the Las Vegas Area. Defendants must demonstrate to the sole satisfaction of the United States that the Divestiture will remedy the competitive harm alleged in the Complaint. The Divestiture shall be:

(1)    made to an Acquirer that, in the United States's sole judgment, has the intent and capability (including the necessary managerial, operational, technical, and financial capability) to compete effectively in the sale of Medicare Advantage Plans in the Las Vegas Area; and

6

(2)      accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between Defendants and the Acquirer gives Defendants the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere with the Acquirer's ability to compete effectively.

D.      Defendants shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

E.      Defendants shall provide to the Acquirer, the United States, and any Monitoring Trustee, information relating to the personnel primarily involved in the operation of the Divestiture Assets to enable the Acquirer to make offers of employment to those persons.  Defendants shall not interfere with any negotiations by the Acquirer to employ any of those persons.  For a period of two (2) years from the filing of the Complaint in this matter, Defendants shall not hire or solicit to hire any such person who was hired by the Acquirer, unless the Acquirer has notified such person that the Acquirer does not intend to continue to employ the person.

F.      Defendants shall assist the negotiation of and entry into agreement(s) between the Acquirer and HealthCare Partners that will allow members of the Clark and Nye County CMS Plans to have continued access to substantially all of United's Provider Network as of January 2008 on terms no less favorable than United's agreements as of January 2008.

G.      Upon completing the Divestiture and through March 31, 2010, Defendants shall have no agreements with HealthCare Partners or PIPA that provide for access by

United to HealthCare Partners or PIPA in connection with enrollees in any type of individual Medicare Advantage plan of Defendants in the Las Vegas Area.

H.    Upon completing the Divestiture and through March 31, 2009, Defendants shall not use the AARP brand, or any other substantially similar brand, name, or logo, for any type of individual Medicare Advantage plan of Defendants in the Las Vegas Area. Upon completing the Divestiture and through March 31, 2010, Defendants shall not use the SecureHorizons brand, or any other substantially similar brand, name, or logo, for any type of individual Medicare Advantage plan of Defendants in the Las Vegas Area.

I.    At the Acquirer's option, and subject to approval by the United States, Defendants will allow the Acquirer to license and use the SecureHorizons brand, and any other substantially similar brand, name, or logo, with the Divestiture Assets for twelve months upon completing the Divestiture.

J.    At the Acquirer's option, and subject to approval by the United States, Defendants will provide transitional support services for medical claims processing, appeals and grievances, call-center support, enrollment and eligibility services, access to form templates, pharmacy services, disease management, Medicare risk-adjustment services, quality-assurance services, and such other transition services that are reasonably necessary for the Acquirer to operate the Divestiture Assets. Defendants shall not provide such transitional support services for more than twelve months from the date of the completion of the Divestiture unless the United States shall otherwise approve.

K.    To ensure an effective transition and transfer of enrollees in the Clark and Nye County CMS Plans to the Acquirer, Defendants shall cooperate and work with the Acquirer in transition planning and implementing the transfer of the Divestiture Assets.

8

L.    Defendants will communicate and cooperate fully with the Acquirer to promptly identify and obtain all consents of government agencies necessary to divest the Divestiture Assets.

M.    Defendants will communicate and cooperate fully with the Acquirer to work in good faith with CMS to select a novation process that is efficient and minimizes any potential disruption and confusion to enrollees in the Clark and Nye County CMS Plans.

N.    United shall warrant to the Acquirer that, since January 1, 2007, United has operated the Divestiture Assets in all material respects in the ordinary course of business consistent with past practices except for the global capitation agreement that United entered into with HealthCare Partners effective January 1, 2008.  United shall also warrant that there has not been (a) any material loss or change with respect to the Divestiture Assets; (b) any event, circumstance, development, or change that has had a material adverse effect on the Divestiture Assets; or (c) any change by United of its accounting or actuarial methods, principles, or practices that is relevant to the Divestiture Assets.

O.    Defendants shall comply with all laws applicable to the Divestiture Assets.

P.    Defendants shall not take any action having the effect of delaying the authorization or scheduling of health care services provided to enrollees in the Clark and Nye County CMS Plans in a manner inconsistent with Defendants' past practice with respect to the Clark and Nye County CMS Plans.

Q.    Defendants shall not make any material change to the customary terms and conditions upon which it does business with respect to the Medicare Advantage Line

9

of Business that would be expected, individually or in the aggregate, to have a materially adverse effect on the Medicare Advantage Line of Business.

R.      United shall identify its top ten independent insurance agents, general agents, producers, and brokers (collectively, "Brokers") that have entered into a Broker contract with respect to the Medicare Advantage Line of Business along with the corresponding number of enrollees produced by each such Broker. United will introduce the Acquirer to any such Broker for the purpose of the Acquirer having an opportunity, at the Acquirer's option, to negotiate an agreement with the Broker to market and sell the Clark and Nye County CMS Plans after the completion of the Divestiture.

S.      Defendants shall first attempt to sell the Divestiture Assets to Humana.

T.      If Defendants fail to divest the Divestiture Assets by May 15, 2008, at the discretion of the United States, United shall be required to submit all necessary filings to CMS to ensure that the Divestiture Assets remain a viable, ongoing business, offering the same Medicare Advantage Plans that United offered in 2008 with comparable benefits and premiums.

## V.   APPOINTMENT OF MONITORING TRUSTEE

A.      Upon the filing of this Final Judgment, the United States may, in its sole discretion, appoint a Monitoring Trustee, subject to approval by the Court.

B.      The Monitoring Trustee shall have the power and authority to monitor Defendants' compliance with the terms of this Final Judgment and the Hold Separate and Asset Preservation Stipulation and Order entered by this Court and shall have such powers as this Court deems appropriate. Subject to Section V(D) of this Final Judgment, the Monitoring Trustee may hire at the cost and expense of United any consultants,

accountants, attorneys, or other persons, who shall be solely accountable to the

Monitoring Trustee, reasonably necessary in the Monitoring Trustee's judgment.

C.    Defendants shall not object to actions taken by the Monitoring Trustee in

fulfillment of the Monitoring Trustee's responsibilities under any Order of this Court on

any ground other than the Monitoring Trustee's malfeasance.  Any such objections by

Defendants must be conveyed in writing to the United States and the Monitoring Trustee

within ten (10) calendar days after the action taken by the Monitoring Trustee giving rise

to the Defendants' objection.

D.    The Monitoring Trustee shall serve at the cost and expense of United, on

such terms and conditions as the United States approves.  The compensation of the

Monitoring Trustee and any consultants, accountants, attorneys, and other persons

retained by the Monitoring Trustee shall be on reasonable and customary terms

commensurate with the individuals' experience and responsibilities.

E.    The Monitoring Trustee shall have no responsibility or obligation for the

operation of Defendants' businesses.

F.    Defendants shall assist the Monitoring Trustee in monitoring Defendants'

compliance with their individual obligations under this Final Judgment and under the

Hold Separate and Asset Preservation Stipulation and Order.  The Monitoring Trustee

and any consultants, accountants, attorneys, and other persons retained by the Monitoring

Trustee shall have full and complete access to the personnel, books, records, and facilities

relating to the Divestiture Assets, subject to reasonable protection for trade secret or other

confidential research, development, or commercial information or any applicable

11

privileges.  Defendants shall take no action to interfere with or to impede the Monitoring

Trustee's accomplishment of its responsibilities.

      G.     After its appointment, the Monitoring Trustee shall file monthly reports

with the United States and the Court setting forth the Defendants' efforts to comply with

their individual obligations under this Final Judgment and under the Hold Separate and

Asset Preservation Stipulation and Order.  To the extent such reports contain information

that the trustee deems confidential, such reports shall not be filed in the public docket of

the Court.

      H.     The Monitoring Trustee shall serve until the divestiture of all the

Divestiture Assets is finalized pursuant to either Section IV or Section VI of this Final

Judgment and any agreement(s) for transitional support services described in Section

IV(J) herein have expired.

## VI.  APPOINTMENT OF TRUSTEE

      A.     If Defendants have not divested the Divestiture Assets within the time

period specified in Section IV(A), Defendants shall notify the United States of that fact in

writing.  Upon application of the United States, the Court shall appoint a trustee selected

by the United States and approved by the Court to effect the divestiture of the Divestiture

Assets.

      B.     After the appointment of a trustee becomes effective, only the trustee shall

have the right to sell the Divestiture Assets.  The trustee shall have the power and

authority to accomplish the divestiture to an Acquirer acceptable to the United States at

such price and on such terms as are then obtainable upon reasonable effort by the trustee,

subject to the provisions of Sections IV, VI, and VII of this Final Judgment, and shall

have such other powers as this Court deems appropriate. Subject to Section VI(D) of this

Final Judgment, the trustee may hire at the cost and expense of Defendants any

investment bankers, attorneys, or other agents, who shall be solely accountable to the

trustee, reasonably necessary in the trustee's judgment to assist in the divestiture.

  C.  Defendants shall not object to a sale by the trustee on any ground other

than the trustee's malfeasance. Any such objections by Defendants must be conveyed in

writing to the United States and the trustee within ten (10) calendar days after the trustee

has provided the notice required under Section VII.

  D.  The trustee shall serve at the cost and expense of Defendants, on such

terms and conditions as the United States approves, and shall account for all monies

derived from the sale of the assets sold by the trustee and all costs and expenses so

incurred. After approval by the Court of the trustee's accounting, including fees for its

services and those of any professionals and agents retained by the trustee, all remaining

money shall be paid to Defendants and the trust shall then be terminated. The

compensation of the trustee and any professionals and agents retained by the trustee shall

be reasonable in light of the value of the Divestiture Assets and based on a fee

arrangement providing the trustee with an incentive based on the price and terms of the

divestiture and the speed with which it is accomplished, but timeliness is paramount.

  E.  Defendants shall assist the trustee in accomplishing the required

divestiture. The trustee and any consultants, accountants, attorneys, and other persons

retained by the trustee shall have full and complete access to the personnel, books,

records, and facilities relating to the Divestiture Assets, and Defendants shall develop

financial and other information relevant to such business as the trustee may reasonably

request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information.  Defendants shall take no action to interfere with or to impede the trustee's accomplishment of the divestiture.

F.    After its appointment, the trustee shall file monthly reports with the United States and the Court setting forth the trustee's efforts to accomplish the divestiture ordered under this Final Judgment.  To the extent that such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court.  Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person.  The trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

G.    If the trustee has not accomplished the divestiture ordered under this Final Judgment within six months after its appointment, the trustee shall promptly file with the Court a report setting forth (1) the trustee's efforts to accomplish the required divestiture, (2) the reasons, in the trustee's judgment, why the required divestiture has not been accomplished, and (3) the trustee's recommendations.  To the extent that such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court.  The trustee shall at the same time furnish such report to the United States which shall have the right to make additional recommendations consistent with the purpose of the trust.  The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if

14

necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

## VII. NOTICE OF PROPOSED DIVESTITURE

A.     Within two (2) business days following execution of a definitive divestiture agreement, Defendants or the trustee, whichever is then responsible for effecting the divestiture required herein, shall notify the United States and any Monitoring Trustee of any proposed divestiture required by Section IV or VI of this Final Judgment. If the trustee is responsible, it shall similarly notify Defendants. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.     Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from Defendants, the proposed Acquirer, any other third party, or the trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirer. Defendants and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.     Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from Defendants, the proposed Acquirer, any third party, and the trustee, whichever is later, the United States shall provide written notice to Defendants and the trustee, if there is one, stating whether or not it objects to the proposed divestiture. If the

United States provides written notice that it does not object, the divestiture may be

consummated, subject only to Defendants' limited right to object to the sale under

Section VI(C) of this Final Judgment.  Absent written notice that the United States does

not object to the proposed Acquirer or upon objection by the United States, a divestiture

proposed under Section IV or Section VI shall not be consummated.  Upon objection by

Defendants under Section VI(C), a divestiture proposed under Section VI shall not be

consummated unless approved by the Court.

## VIII.  FINANCING

Defendants shall not finance all or any part of any Purchase made pursuant to

Section IV or VI of this Final Judgment.

## IX.  HOLD SEPARATE AND PRESERVATION OF ASSETS

Until the divestiture required by this Final Judgment has been accomplished,

Defendants shall take all steps necessary to comply with the Hold Separate and Asset

Preservation Stipulation and Order entered by this Court.  Defendants shall take no action

that will jeopardize any divestiture ordered by this Court.

## X.  AFFIDAVITS AND RECORDS

A.    Within twenty (20) calendar days of the filing of the Complaint in this

matter, and every thirty (30) calendar days thereafter until the divestiture has been

completed under Section IV or VI, Defendants shall deliver to the United States and any

Monitoring Trustee an affidavit as to the fact and manner of its compliance with Section

IV or VI of this Final Judgment.  Each such affidavit shall include the name, address, and

telephone number of each person who, during the preceding thirty (30) calendar days,

made an offer to acquire, expressed an interest in acquiring, entered into negotiations to

16

acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts Defendants have taken to solicit buyers for the Divestiture Assets, and to provide required information to prospective Acquirers, including the limitations, if any, on such information. Assuming that the information set forth in the affidavit is true and complete, any objection by the United States to information provided by Defendants, including limitation on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B.      Within twenty (20) calendar days of the filing of the Complaint in this matter, Defendants shall deliver to the United States and any Monitoring Trustee an affidavit that describes in reasonable detail all actions that Defendants have taken and all steps that Defendants have implemented on an ongoing basis to comply with Section IX of this Final Judgment. Defendants shall deliver to the United States and any Monitoring Trustee an affidavit describing any changes to the efforts and actions outlined in Defendants' earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

C.      Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

## XI.  COMPLIANCE INSPECTION

A.      For the purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized

17

representatives of the United States Department of Justice, including persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

    (1)    to access during Defendants' office hours to inspect and copy, or at the United States's option, to require that Defendants provide hard copy and electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Final Judgment; and

    (2)    to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding these matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

    B.    Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports, or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment.

    C.    No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, which includes CMS, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.    If at the time information or documents are furnished by Defendants to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(7) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(7) of the Federal Rules of Civil Procedure," then the United States shall give Defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than grand jury proceedings).

## XII. <u>NO REACQUISITION</u>

Defendants may not reacquire any part of the Divestiture Assets during the term of this Final Judgment provided, however, that this Final Judgment shall not prohibit Defendants from offering individual Medicare Advantage Plans in the ordinary course of business otherwise in conformity with this Final Judgment.

## XIII.    <u>RETENTION OF JURISDICTION</u>

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIV. <u>EXPIRATION OF FINAL JUDGMENT</u>

Unless this Court grants an extension, this Final Judgment shall expire ten (10) years from the date of its entry.

## XV.  **PUBLIC INTEREST DETERMINATION**

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States's responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Court approval subject to procedures of Antitrust
Procedures and Penalties Act, 15 U.S.C. § 16

_____        _____
Date                           United States District Judge

20